# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:18-CR-00098-MOC

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| NICKOLAS M. GODFREY, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Defendant's Motion for Compassionate Release, brought pursuant to 18 U.S.C. § 3582(c)(1)(A). See Doc. No. 48. For reasons discussed below, Defendant's motion is denied at this time.

## I. BACKGROUND

On March 20, 2018, a federal grand jury in the United States District Court for the Western District of North Carolina entered a bill of indictment, charging Defendant with five crimes: securities fraud, wire fraud, two counts of transactional money laundering, and tax evasion. See Doc. Nos. 3, 9. Four months later, Defendant entered a straight up guilty plea on all five counts. See Doc. No. 19. Thereafter, the United States Probation Office prepared a presentence investigation report to assist the Court in sentencing the defendant. See Doc. No. 27. The Court adopted that report when imposing its sentence. See Doc. No. 37.

The report carefully documented the nature and the circumstances of the offenses leading to Defendant's guilty plea. From about 2012 to 2015, Defendant defrauded over a dozen victims through a Ponzi scheme. See Doc. No. 27 at 5. Defendant falsely represented to his victims that his company, Coast to Coast Business Funding, generated revenue by providing short-term cash advances to businesses. Id. at 4. Like many of these Ponzi schemes, Defendant promised his

victims that they would receive large returns on their investment, and at least some investors were promised up a 73.5% return over a six-month period. Id. at 6. Instead, Defendant used the funds on his personal expenses and to conceal the scheme through Ponzi-type payments to earlier victims. Id. at 6. Eventually, Defendant's false statements were unable to ward off suspicion, and investigators were alerted. Id. at 6. Once the dust settled, Defendant was held responsible for $611,068.52 in pecuniary losses for this Ponzi Scheme. See Doc. Nos. 27 at 9, 36 at 4–9.

Apart from his scheme, Defendant also evaded taxes on federal income and employment. As the owner and operator of a North Carolina company, Defendant withheld federal income tax, social security tax, and Medicare tax from his employees' paychecks but failed to pay over a substantial amount of those taxes to the Internal Revenue Service. Id. at 6. Defendant took several steps to thwart the IRS's collection efforts. Id. For example, Defendant falsely represented to the IRS that he did not have any bank accounts or credit cards and that he paid his expenses with money orders. Id. at 7. In fact, Defendant used multiple bank accounts to conceal his income and also had several credit cards. Id. And Defendant submitted numerous fraudulent tax returns, which inaccurately reported his net income, and which falsely claimed that certain required payments were made when they were not. Id. at 8. Ultimately, Defendant was held responsible for $1,011,438.02 in unpaid taxes and penalties. See Doc. Nos. 27 at 8–9, 36 at 4–9.

Based on the nature of the offense and Defendant's criminal history, the Court found that Defendant's Total Offense Level was 23, Criminal History Category was I, and his Guidelines imprisonment range was between 46 and 57 months. See Doc. No. 37 at 1. Still, the Court varied downward and imposed a sentence of 37 months' imprisonment. See Doc. Nos. 36, 37. Defendant has served about one-third of that sentence and has a projected release date in around March 2022.

On June 2, 2020, Defendant filed the instant motion, seeking compassionate release from

2

prison based on the COVID-19 pandemic. In support, Defendant maintains that he is at an increased vulnerability to COVID-19 because of his health conditions. Specifically, Defendant supplied medical records showing he suffers from high blood pressure, ulcerative colitis, and a hiatal hernia. See generally Doc. No. 48-1. Defendant also asserted that he suffered from acute cardiovascular disease, see id. at 5, but his medical records did not support that claim, see, e.g., id. at 84–86 (noting that Defendant was "brought in by ambulance for reports of chest pain" but he has "no acute cardiopulmonary disease" and "has hypertension only"). Defendant also asserted that he should be released because he "poses a low risk of recidivism," "poses no threat of violence to the community," has had "impeccable conduct in prison," and plans to self-quarantine with his wife before obtaining "suitable, gainful employment." See Doc. No. 48 at 9.

The Government responded in opposition to Defendant's motion, first recognizing there is no "evidence that Defendant has not been able to receive adequate medical care while [imprisoned]." Doc. No. 50 at 11. Moreover, "at FCI Edgefield, where Defendant is incarcerated, [the Bureau] has not reported any inmates or staff testing positive for COVID-19." Id. Based on those two facts, the Government maintains that Defendant failed to explain "extraordinary and compelling reasons" warranting a sentence reduction under 18 U.S.C. § 3582(c)

Second, the Government alleged that the § 3553(a) factors militated against compassionate release. In particular, the Government maintained that a sentence reduction was not warranted because Defendant has served only about 12 months of the 37-month sentence that he received for his $1.2 million fraudulent schemes. Id. at 12–13. According to the Government, release now would create unwarranted sentencing disparities, would fail to serve the need for specific and general deterrence, and would fail to reflect the seriousness of Defendant's offense. Id.

3

## II. ANALYSIS

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." As relevant here, an applicable policy statement provides that the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the Court determines that" (1) "extraordinary and compelling reasons warrant the reduction," (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13; see United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020).

Here, the Court has considered the state of the COVID-19 pandemic—both generally and within FCI Edgefield—Defendant's criminal history, his medical conditions, his disciplinary record while imprisoned, and his plan to return home and self-quarantine before obtaining gainful employment. The Court has also considered the fact that Defendant was convicted of a non-violent criminal offense. On balance, the weight of this evidence and the § 3553(a) factors counsel against release at this time. As explained by the Government—and as expressly adopted here—Defendant failed to present an "extraordinary and compelling reasons" warranting a reduction. See Doc. No. 50 at 9–12. And, even assuming Defendant did present such a reason, the §3553(a) factors weigh against release. See id. at 12–13. Thus, the Court declines to order compassionate release.

4

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release, Doc. No. 48, is **DENIED.**

Signed: June 18, 2020

Max O. Cogburn Jr
United States District Judge