UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-CR-98-MOC

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>vs. )<br>)<br>NICKOLAS M. GODFREY, )<br>)<br>Defendant. )<br>) | **ORDER** |

**THIS MATTER** comes before the Court on Defendant's Second Motion for Compassionate Release, brought pursuant to 18 U.S.C. § 3582(c)(1)(A). See (Doc. No. 52). For reasons discussed below, Defendant's motion is denied.

## I.  BACKGROUND

From about 2012 to 2015, Defendant defrauded over a dozen victims through a Ponzi scheme. See (Doc. No. 27 at 5). Defendant falsely represented to his victims that his company, Coast to Coast Business Funding, generated revenue by providing short-term cash advances to businesses. (Id. at 4). Defendant was ultimately held responsible for $611,068.52 in pecuniary losses for this Ponzi scheme. See (Doc. Nos. 27 at 9, 36 at 4–9). Apart from the Ponzi scheme, Defendant also evaded taxes on federal income and employment.

On March 20, 2018, a federal grand jury entered a Bill of Indictment, charging Defendant with securities fraud, wire fraud, two counts of transactional money laundering, and tax evasion. See (Doc. Nos. 3, 9). Four months later, Defendant entered a straight-up guilty plea on all five counts. See (Doc. No. 19). Ultimately, Defendant was held responsible for $1,011,438.02 in unpaid taxes and penalties. See (Doc. Nos. 27 at 8–9, 36 at 4–9).

Based on the nature of the offense and Defendant's criminal history, the Court found that Defendant's Total Offense Level was 23, Criminal History Category was I, and his Guidelines

1

imprisonment range was between 46 and 57 months.  See (Doc. No. 37 at 1).  The Court varied downward and imposed a sentence of 37 months' imprisonment.  See (Doc. Nos. 36, 37). Defendant has served about one-third of that sentence and has a projected release date of March 8, 2022.

On June 2, 2020, Defendant filed his first motion, seeking compassionate release from prison based on the COVID-19 pandemic.  In support, Defendant maintained that he is an increased vulnerability to COVID-19 because of his health conditions.  Specifically, Defendant supplied medical records showing he suffers from high blood pressure, ulcerative colitis, and a hiatal hernia. See generally Doc. No. 48-1. Defendant also asserted that he suffered from acute cardiovascular disease, see id. at 5, but his medical records did not support that claim, see, e.g., id. at 84–86 (noting that Defendant was "brought in by ambulance for reports of chest pain" but he has "no acute cardiopulmonary disease" and "has hypertension only").  Defendant also asserted that he should be released because he "poses a low risk of recidivism," "poses no threat of violence to the community," has had "impeccable conduct in prison," and plans to self-quarantine with his wife before obtaining "suitable, gainful employment."  See Doc. No. 48 at 9.  The Court denied the first motion for compassionate release finding that Defendant "failed to present extraordinary and compelling reasons warranting reduction" … "And, even assuming Defendant did present such a reason the §3553(a) factors weigh against release."  (Doc. No. 51 at 4).

On August 24, 2020, Defendant filed the pending, Second Emergency Motion for Compassionate Release, requesting that he be re-sentenced to a sentence of imprisonment of time-served or, alternatively, a sentence of time-served followed by a term to supervised release not to exceed the balance of his original prison sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), and Section 12003(b)(2) of the Coronavirus Aid, Relief, and

Economic Security Act ("CARES Act"), 18 U.S.C. § 3642(c)(2). Specifically, Defendant now requests the Court to consider both compassionate release as well as ordering the Government to grant Defendant home confinement under § 12003(b)(2) of the CARES Act and as set out in the Memorandum of the Attorney General, dates March 26, 2020, titled "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic." As evidence of his need for release or home confinement, Defendant contends that he is at an increased risk of contracting COVID-19 at FCI Edgefield where he is imprisoned. (Doc. No. 52 at 1-2). In addition to the medical issues he listed in his first request for compassionate release, Defendant adds that he now suffers from Obstructive Sleep Apnea and that the health conditions at FCI Edgefield have deteriorated. (Doc. No. 52 at 2).

The Government has responded in opposition to Defendant's Motion, first recognizing that the "Defendant does not raise any changed conditions that create compelling and extraordinary reason supporting his request for release." (Doc. No. 54 at 1). Although not attached to Defendant's motion, records obtained from BOP reflect that Defendant's sleep apnea was known before his first Emergency Motion, whether or not it had been officially diagnosed. See (Doc. No. 50). Regarding changed conditions at FCI Edgefield, the Government notes that BOP's website indicates that currently only two inmates and seventeen staff are COVID-19 positive, while ninety-four inmates and nine staff have recovered from COVID-19. See BOP COVID-19 Cases by institution, available at https://www.bop.gov/coronavirus/index.jsp (last accessed September 22, 2020). Moreover, BOP has reported no COVID-19 related deaths at FCI Edgefield among inmate or staff. Id.

Furthermore, the Government argues that the § 3553(a) factors militate against compassionate release. Incorporating its reasons for opposition to Defendant's first Motion for Compassionate Release, the Government maintains that a sentence reduction is not warranted

3

because Defendant has served only about 12 months of his 37-month sentence. According to the Government, release now would create unwarranted sentencing disparities, would fail to serve the need for specific and general deterrence, and would fail to reflect the seriousness of Defendant's offense. Finally, the Government argues that this Court does not have the authority to direct the BOP to place the Defendant in home confinement. (Doc. No. 54 at 6).

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrants such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." As relevant here, an applicable policy statement provides that the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the Court determines that" (1) "extraordinary and compelling reasons warrant the reduction," (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13; see United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020).

Here as in the last compassionate release order, the Court has considered the state of the COVID-19 pandemic—both generally and within FCI Edgefield—Defendant's criminal history, his medical conditions, his disciplinary record while imprisoned, and his plan to return home and self-quarantine before obtaining gainful employment. The Court has also considered the fact that Defendant was convicted of a non-violent criminal offense. On balance, the weight of this evidence and the Section 3553(a) factors counsel against release at this time. As explained by the Government—and as expressly adopted here—Defendant failed to present an "extraordinary and compelling reasons" warranting a reduction. See (Doc. No. 54 at 4–5). And even assuming Defendant did present such a reason, the Section 3553(a) factors weigh against release. See (Doc. No. 50 at 12–13).

4

Finally, once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. See 18 U.S.C. § 3621(b); Moore v. United States Att'y Gen., 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); see also McKune v. Lile, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). A court has no authority to designate a prisoner's place of incarceration. United States v. Voda, 994 F.2d 149, 151–52 (5th Cir. 1993). Because Defendant's request for home confinement alters only the place of incarceration, not the actual term of incarceration, only BOP may grant or deny his request, and this Court has no authority to act on his request for such relief. United States v. Williams, 2020 WL 2300206, *3 (W.D. Tenn. May 1, 2020) ("The Court does not have authority under 18 U.S.C. § 3582(c)(1)(A) to place a prisoner in home confinement."); Deffenbaugh v. Sullivan, No. 5:19-HC-2049-FL, 2019 WL 1779573, at *1 (E.D.N.C. Apr. 23, 2019); United States v. Overcash, No. 3:15-CR-263-FDW-1, 2019 WL 1472104, at *3 (W.D.N.C. Apr. 3, 2019).

Thus, the Court declines to order compassionate release or home confinement.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Second Motion for Compassionate Release, (Doc. No. 52), is **DENIED**.

Signed: October 13, 2020

Max O. Cogburn Jr
United States District Judge

5

Case 3:18-cr-00098-MOC-DSC   Document 55   Filed 10/13/20   Page 5 of 5